PAMELA ROBINSON,

    Plaintiff,

v.

COMMISIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:25-cv-01064

Judge Waverly D. Crenshaw, Jr.
Magistrate Luke A. Evans

To:    The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

Plaintiff Pamela Robinson initiated this suit on September 19, 2025, and seeks review of the Commissioner of the Social Security Administration's ("SSA") March 10, 2025 decision (Doc. No. 8 at 18) denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (Doc. No. 1). On December 12, 2025, Robinson moved for judgment on the administrative record (Doc. No. 9), to which the Commissioner responded in opposition (Doc. No. 14).

Having considered the parties' arguments and the administrative record (Doc. No. 8) as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court deny Robinson's motion and affirm the Commissioner's decision.

## I.    Background

### A.    Robinson's DIB Application

Robinson filed an application under Title II of the Social Security Act, 42 U.S.C. § 401 *et*

*seq.*, for a period of disability and DIB on December 13, 2022. (AR 17.)[1] Robinson, with the assistance of a non-attorney representative, originally alleged December 31, 2020, as her disability onset date before later claiming August 1, 2021, as the relevant onset date. (*Id.*) In seeking DIB, Robinson alleges disability based on the following: (1) joint pain and swelling; (2) "vagus nerve issues;" (3) rheumatoid arthritis; (4) fatigue; (5) brain fog; (6) degenerative arthritis of the lumbar spine; (7) vitamin D deficiency; (8) inflammatory arthritis; (9) constant migraines; (10) high blood pressure; (11) potassium deficiency; and (12) hiatal hernia. (Doc. No. 9-1 at 2.) The Commissioner denied Robinson's initial application on September 6, 2023. (AR at 71.)

Robinson subsequently requested that the Commissioner reconsider the denial (AR 90) and the Commissioner again denied her DIB application on July 12, 2024 (AR 92). Robinson then requested a hearing before an Administrative Law Judge ("ALJ") on July 18, 2024, for further review of her application. (AR 95.) Upon Robinson's request, the ALJ held a telephonic hearing on January 16, 2025, where Robinson and Vocational Expert Julie McKeown appeared and testified. (AR 24, 39.) Roughly two months later, on March 10, 2025, the ALJ issued its decision denying Robinson's DIB application. (AR 14–30.) Finally, Robinson appealed the ALJ's decision to the SSA Appeals Council online on May 4, 2025 (AR 119) and via a formal letter on May 15, 2025. (AR 272.) The Appeals Council handed down its decision upholding the ALJ's denial on Augst 22, 2025. (AR 1–5.) This rendered denial of Robison's application the Commissioner's final decision for purposes of this Court's review.

Robinson filed the instant action with the assistance of counsel and was permitted to proceed in this action *in forma pauperis*. (Doc. No. 5.)

---

[1] The administrative transcript (Doc. No. 8) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

### B.     The ALJ's Findings

In its March 10, 2025 decision, the ALJ found that, for purposes of Robinson's DIB application, Robinson was not disabled within the meaning of the Social Security Act and its implementing regulations from December 31, 2020, through the March 10, 2025 decision date. (AR 18.) As relevant for review here, the ALJ found that Robinson met the insured status requirement set forth by the Social Security Act and had not been engaged in substantial gainful activity since Robinson's amended disability onset date of August 1, 2021. (AR 20.)

The ALJ then considered all of Robinson's asserted medically determinable impairments and distinguished between those it found to be "severe," those impairments that were not severe, and conditions that did not rise to the level of a medically determinable impairment. (*Id.*) The ALJ specifically found that Robinson had severe impairments in the form of "peripheral neuropathy; migraines; high blood pressure; morbid obesity; pedal edema; degenerative disc disease; tinnitus; and seronegative rheumatoid arthritis[.]" (*Id.*) Upon review, the ALJ also found that Robinson's diagnoses of hyperlipidemia and obstructive sleep apnea were medically determinable impairments but that they were non-severe in nature. (*Id.*)

Finally, the ALJ also considered other ailments and conditions complained of by Robinson, but it found that the following did not rise to the level of a medically determinable impairment under Social Security Ruling ("SSR") 16-3p: carpal tunnel of the left upper limb; tarsal tunnel syndrome; fibromyalgia; brain fog; incontinence; and immunity deficits. (AR 20–21.)

Considering the symptoms associated with Robinson's medically determinable impairments, the ALJ found that Robinson had the RFC to perform light work consistent with 20 C.F.R. § 404.1567(b),

> except that [Robinson] can occasionally climb ramps or stairs; she can occasionally balance, kneel, stoop, crouch, and crawl; she can never climb ladders, ropes, or scaffolds; she can frequently reach, handle and finger bilaterally; she can

3

occasionally be exposed to workplace hazards such as dangerous moving mechanical parts and high exposed places. She has the ability to understand, remember, and carry out instructions to perform simple tasks; she can respond appropriately to others and work situations where there is frequent interaction with supervisors, coworkers and the general public. She should not work in an environment that is stringently production or quota-based—and thus may not perform fast-paced assembly line type of work—but can meet production requirements that allow a flexible and goal-oriented pace. She can occasionally be exposed to weather. She cannot work in bright light defined as working in direct sunlight or in any lighting brighter than that which is typically found in an office environment, other than incidental exposure; she is limited to working in an environment with no more than a moderate noise level as defined by the [the Department of Labor's Selected Characteristics of Occupations], other than incidental exposure; and she should never be exposed to excessive vibration.

(AR 23) (cleaned up).

In making these findings, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" consistent with the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p. (*Id.*) The ALJ stated that it "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c." (*Id.*)

### C. Appeal Under 42 U.S.C. § 405(g)

On appeal, Robinson argues that the Commissioner "committed error of law by denying Appeals Council review of the decision by the [ALJ], or otherwise to deny relief that was within the authority of the Appeals Council." (Doc. No. 1 at 1.) Robinson further argues that that "[t]he Commissioner made errors of law, including but not limited to, the improper evaluation of the medical evidence and the opinions of record." (*Id.* at 2.) More specifically, Robinson asserts that the SSA's "conclusions and findings of fact . . . are not supported by substantial evidence and are contrary to law and regulation." (*Id.*) As relief, Robinson asks that the Court either reverse the agency's decision and find that she is entitled to benefits or, in the alternative, that the Court remand the matter back to the agency for further proceedings. (*Id.*)

4

On December 12, 2025, Robinson filed the instant motion for judgment on the administrative record and reiterated her request that this Court reverse the agency's final decision, find her "disabled" for purposes of the Social Security Act, and grant her DIB. (Doc. Nos. 9, 9-1.) The Commissioner opposes the motion. (Doc. No. 14.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack

of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B.    Determining Disability at the Administrative Level

Robinson applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Robinson must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir.

6

2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite her limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant's residual functional capacity ("RFC") permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

7

### III.	Analysis

In moving for judgment on the administrative record, Robinson argues that the ALJ's decision should be reversed for two main reasons. (Doc. No. 9-1.) First, Robinson maintains that the ALJ "failed to properly consider the evidence in assessing Ms. Robinson's residual function capacity" ("RFC"). (*Id.* at 11.) In addition, Robison argues that the ALJ "improperly evaluated her disabling symptoms" in denying that Robinson is disabled and entitled to DIB. (*Id.*)

Conversely, the Commissioner argues that the ALJ properly evaluated Robinson's disability claims and found that her allegations were not supported by the record evidence. (Doc. No. 14 at 13.) The Commissioner further argues that the ALJ's finding that Robinson had an RFC that allows for simple, light work was supported by substantial evidence. (*Id.*) The Commissioner asks that the Court deny the instant motion and affirm the Commissioner's decision. (*Id.*)

### A.	Insufficient Consideration of Symptoms

Although Robinson raises the issue as the second point of error, the Court first assesses her argument that the ALJ committed reversable error for improperly evaluating Robinson's disabling symptoms. Specifically, Robinson asserts that the ALJ failed to give sufficient weight to her own testimony as to her alleged "symptoms of disabling severity[.]" (Doc. No. 9-1 at 11, 17.)

SSA regulations recognize that symptoms, including pain, "are subjective and difficult to quantify" and therefore the agency will use other evidence to help determine the disabling effects or functional limitations imposed by such symptoms. 20 C.F.R. § 404.1529(c)(3). This additional evidence includes: (1) the claimant's daily activities; (2) the location, frequency, duration, and intensity of their pain or other symptoms; (3) relevant precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any and all medication; and (5) the treatment, other than medication, that a claimant receives or has received for relief from the symptoms; (6) any measures that a claimant uses or has used to relieve symptoms; and (7) other factors that concern

limitations or restrictions on a claimant's ability to function due to the symptoms. 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

Generally, when reviewing an ALJ's findings and determinations, the Court is mindful of the deference owed to an ALJ as the factfinder. While a claimant may point to other evidence in the record that could support a different finding, under § 405(g) this Court is limited to considering whether an ALJ's finding regarding a claimant's alleged physical health symptoms is supported by substantial evidence. "[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The Supreme Court has emphasized that "the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

Here, Robinson states that the ALJ erred where it found that her claimed symptoms "could be expected to cause some symptoms," but that the stated frequency and severity of those symptoms were inconsistent with medical and other evidence contained in the record. (Doc. No. 9-1 at 18.) Robinson maintains the ALJ made this finding in error because the ALJ "appear[ed] to interpret clinical findings" despite lacking the requisite medical expertise and because the ALJ purportedly "rel[ied] on Ms. Robinson's allegedly conservative [medical] treatment" without considering—or, at least, without explaining its consideration of—reasons Robinson may not have sought additional treatment for her ailments and symptoms. (*Id*. at 18–20.)

### 1. Interpreting Medical Evidence

Robinson asserts that the ALJ erred in finding her testimony and statements as to her symptoms to be inconsistent with the record evidence. This constitutes error, she continues, because the ALJ "appears to [have] interpret[ed] clinical findings without any medical expertise . . . which is impermissible." (Doc. No. 9-1 at 18.) Robinson further argues that the ALJ

"unduly relied on the medical evidence in the record to find Ms. Robinson's symptoms not disabling . . . ." (*Id*. at 19.) The Commissioner disputes this argument and maintains that the ALJ simply played its role; it was not "playing doctor" and attempting to replace the medical professionals' opinions with its own. (Doc. No. 14 at 12.)

The Court finds Robinson's argument unavailing. First, the ALJ states in its decision that it considered all symptoms complained of by Robinson and assessed whether her subjective complaints comported with objective medical evidence, physician medical opinions, and prior administrative medical findings. (AR 23.) For example, in evaluating the limitations imposed by Robinson's high blood pressure, the ALJ reviewed one doctor's notes regarding imaging and patient-complaints, as well as treatment notes. This occurs throughout the ALJ's written decision and illustrates that the ALJ was not simply relying on its own interpretation of medical records.

Despite Robinson's suggestion that an ALJ may not interpret medical evidence in making its determination, ALJs are "not required to obtain a medical expert to interpret the medical evidence related to h[er] physical impairments." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013). The Sixth Circuit further explains that "the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled." *Id.* (first citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), and then citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).

The Court finds that the ALJ appropriately considered medical evidence, as well as other evidence like medical opinions, treatment notes, and prior administrative medical findings. Accordingly, the Court finds that the ALJ's determination is supported by substantial evidence and finds no error in the ALJ's decision.

### 2. Lack of Treatment as Evidence

On this point, Robinson's argument is confusing where she states that,

> [a]dditionally, the ALJ's decision shows that the ALJ found that Ms. Robinson underwent "limited and conservative treatment," but she did not discount her allegations of subjective complaints for this reason, which in itself is error, as the ALJ is required to state with her reasons for discounting an opinion.

(Doc. No. 9-1 at 19 (quoting AR 26).) Later in her memorandum, Robinson goes on to dispute the ALJ's stated reason for finding inconsistencies between Robinson's subjective complaints and the record evidence; namely, that the ALJ relied on Robinson's "allegedly conservative treatment[.]" (*Id.* at 19–20.)

Insofar as Robinson claims that the ALJ erred on this determination, the Commissioner contends that the "ALJ properly considered [Robinson's] medical treatment" and that, in doing so, found that the level of treatment Robinson received was inconsistent with the alleged frequency of severity of her symptoms. (Doc. No. 14 at 11.)

Here, Robinson is correct in stating that rejection of the subjective complaints of a claimant may be a point of error when an ALJ does so on the basis of a perceived lack or insufficiency of medical treatment. (Doc. No. 9-1); *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir. 2018) ("We recognize, as we have before, that ALJs must be careful not to assume that a [claimant's] failure to receive mental-health treatment evidences a tranquil mental state . . . .") (internal citations omitted). Nevertheless, the Court finds that the ALJ's decision on this point is supported by substantial record evidence.

The ALJ thoroughly recounted Robinson's severe and non-severe medically determinable impairments and, where record evidence exists, compared Robinson's subjective complaints with treatment records. (AR 25–28.) Many of the ailments of which Robinson complained appear to have improved upon diagnosis and treatment, according to medical evidence in the record. (AR 26–28.) As the Commissioner points out, the ALJ analyzed many reported medical conditions and the extent to which medication and other forms of treatment improved Robinson's symptoms.

(Doc. No. 14; AR 25–28.) Most importantly for this issue, the ALJ examined Robinson's treatment history for her ailments. But, that was not all that the ALJ relied on. For example, the ALJ cites multiple doctors' statements that Robinson's complaints of back pain and pain associated with arthritis "seemed out of proportion to the imaging," including "the findings on x-ray[.]" (AR 25, 26.)

Contrary to Robinson's arguments, the Court finds no error in the ALJ's determination that Robinson's subjective complaints were inconsistent with the record evidence. The Court further finds that the ALJ specifically explained why it discounted Robinson's subjective complaints and that it was not solely from relying on Robinson's "conservative treatment." After thorough review, the Court finds no error and that the ALJ's decision is supported by substantial record evidence.

## B. Erroneous Residual Functional Capacity ("RFC")

Having found that the ALJ did not err in considering Robinson's symptoms, the Court next addresses Robinson's argument that the ALJ erred in formulating an RFC of light work with additional limitations. (Doc. No. 9-1.) Robinson's argument on this point is two-fold. First, Robinson insists that the ALJ erred by failing to give proper weight to the medical opinion of her physician, Dr. Enawgaw Mehari. (*Id*.) Second, Robinson asserts that the ALJ failed to account for "all of the limitations stemming from [Robinson's] impairments[.]" (*Id.* at 17.) The Court will address each argument in turn.

### 1. Medical Opinion Evidence

In crafting Robinson's RFC, the ALJ considered medical opinions from several medical providers, including Dr. Mehari, as well as state medical consultants. (AR 27.) The ALJ specifically assessed the opinions provided by the following: Dr. Donita Keown, Dr. Stephen Burge, and Dr. Mehari, whose medical source statement is included in the record. (AR 27–28, 1022–24.) Robinson appears to only take issue with the ALJ's determination that Dr. Mehari's

12

opinion was not persuasive. (Doc. No. 9-1.) The Commissioner disputes this argument and states that the ALJ's determination should remain undisturbed, both because the ALJ appropriately assessed the persuasiveness of Dr. Mehari's opinion and because the ALJ, as factfinder, is the ultimate arbiter where, as here, the ALJ is confronted with conflicting medical opinions. (Doc. No. 14.)

The parties here agree that, because Robinson applied for DIB after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id*. § 416.920c(a), (c)(1)–(5). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id*. § 416.920c(b).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id*. § 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id*. § 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from

other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. § 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ." *Id*. § 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considers the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

The ALJ explained the following regarding Dr. Mehari's medical opinion:

> The undersigned does not find persuasive Dr. Mahari's [*sic*] opinion (Exhibit 15F). The medical record as a whole does not support finding that the claimant is as limited as assessed. Other evidence does show that the claimant has required treatment for osteoarthritis and rheumatoid arthritis. However, examinations generally show that the claimant has a full range of motion in all joints, with no finding of tender points. Examinations show normal strength and sensation. Dr. Keown found that the claimant had normal ability to walk. There is no evidence that the claimant has required any assistive device to ambulate. In consideration of other complaints, including the claimant's subjective complaints, the undersigned finds it appropriate to include additional environmental limitations, including those for migraines, obesity, and high blood pressure. The undersigned would also limit the claimant to simple tasks due to effects of her multiple physical impairments. Dr. Mahari [*sic*] appears to base his findings on the claimant's subjective reports rather than the objective evidence.

(AR 28.) Robinson argues that the ALJ erred because it: (1) substituted its own opinion for that of Dr. Mehari, which the ALJ is not qualified to do; (2) mischaracterized the record evidence and found that Robinson required no medical treatment for arthritis (and "cherrypicked evidence from Dr. Mehari's opinion more generally); and (3) did not explain how Robinson's "subjective reports [of her symptoms] pertain to the opinion." (Doc. No. 9-1 at 14–16.)

The Court disagrees. As can be seen in the quoted language above, the ALJ explicitly stated

that Robinson required treatment for arthritis and, accordingly, cannot have mischaracterized such evidence. And, while the ALJ may not have specifically mentioned the words "supportability" or "consistency," it is clear from the ALJ's written decision that it examined whether Dr. Mehari's opinion was supported by and consistent with the other evidence in the record. Finally, the Court disagrees that the ALJ "cherrypicked" evidence to undermine the persuasiveness of Dr. Mehari's opinion. Aside from Dr. Mehari's written "Medical Source Statement" (AR 1023), the ALJ cites to Dr. Mehari's treatment notes throughout the decision, including citing to Dr. Mehari's documentation found in exhibits 4F (beginning at AR 337), 6F (beginning at AR 489), 10F (beginning at AR 636), and 14F (beginning at AR 1016).

Considering the parties' arguments and the evidence in the record, the Court finds that, overall, the ALJ provided a sufficient explanation of the supportability and consistency of Dr. Mehari's opinion. It is clear that the ALJ found that both the statements or findings in Dr. Mehari's opinion and the other evidence in the record contradicted, or at least weakened, Dr. Mehari's opinion, which rendered the opinion unpersuasive to the ALJ. Despite finding the opinion unpersuasive as a whole, however, the ALJ partially relied on Dr. Mehari's opinion—alongside Robinson's subjective complaints—to impose additional restrictions for Robinson's RFC in order to avoid exacerbating her symptoms. (AR 24, 28.)

Finding no error in the ALJ's consideration and explanation of the persuasiveness of Dr. Mehari's opinion, Robinson's argument on this point fails.

### 2. Other Medical Limitations

Robinson appears to allege that the ALJ erred in formulating the RFC because it purportedly "does not account for all of the limitations stemming from her impairments . . . ." (Doc. No. 9-1 at 17.) Specifically, Robinson argues that the ALJ's RFC formulation is erroneous

because it failed to account for "Robinson's well documented incontinence." (Doc. No. 9-1 at 16.) In short, Robinson argues that the ALJ "cherry-picked" evidence on which it relied in making its finding at the RFC stage. (*Id*.) In opposing Robinson's argument, the Commissioner simply states that "the ALJ considered [Robinson's] alleged incontinence and found that there was no evidence of treatment for the impairment." (Doc. No. 14 at 11.)

Not only did the ALJ consider Robinson's testimony regarding incontinence and find that there is no evidence she received treatment for the condition, it also found that, because incontinence (and other conditions) was not diagnosed or treated by an acceptable medical source, it did not rise to the level of a severe or non-severe medically determinable impairment. (AR 21.) Accordingly, the ALJ was under no obligation to account for incontinence in formulating the RFC. As SSA regulations explain, an ALJ must consider the effects and potential limitations of severe and non-severe *medically determinable impairments*, 20 C.F.R. § 404.1545, but say nothing about accounting for the potential limitations imposed by non-medically determinable impairments. Nor does Robinson direct the Court to any authorities requiring such consideration. Instead, some district courts have asserted that the only obligation an ALJ has after finding a condition or ailment is not a medically determinable impairment is to explain that conclusion. *Mario O. v. Kijakazi*, Case No. 21-CV-2469, 2022 WL 18157524, at *8 (D. Minn. Dec. 13, 2022) ("If an ALJ concludes that an impairment is not medically determinable, then the ALJ must explain that conclusion. Absent such an explanation, a court is unable to exercise meaningful judicial review.") (internal citation omitted), *report and recommendation adopted*, 2023 WL 136590 (D. Minn. Jan 9, 2023). Here, the ALJ did just that. (AR 20–21.)

Considering the parties' arguments and the record evidence, the Court finds that substantial evidence shows that Robinson's RFC, including additional limitations, adequately accounts for all

of the limitations that the ALJ found credible. Accordingly, the ALJ's decision should not be disturbed.

Because the Court finds that the ALJ's disability determination was supported by substantial record evidence, Robinson's claimed errors do not warrant reversal and the Commissioner's final decision should be affirmed.

## IV.        Recommendation

Because the Magistrate Judge finds that the ALJ's decision is supported by substantial record evidence, the Magistrate Judge RECOMMENDS that Plaintiff Pamela Robinson's motion for judgment on the administrative record (Doc. No. 9) be DENIED and the Commissioner's final disability decision be AFFIRMED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 2nd day of July, 2026.

LUKE A. EVANS
United States Magistrate Judge

17